**Sylvester LOCKHART, Jr., Appellant,**

v.

**Charles A. HOENSTINE, Prothonotary of the Superior Court of Pennsylvania.**

**No. 17542.**

United States Court of Appeals
Third Circuit.

Submitted March 28, 1969.

Decided May 9, 1969.

See also 3 Cir., 408 F.2d 354.

Sylvester Lockhart, Jr., pro se.

Stanley A. Winikoff, Deputy Atty. Gen., Harrisburg, Pa., for appellee (William C. Sennett, Atty.Gen., Harrisburg, Pa., on the brief).

Before SEITZ, ALDISERT and STAHL, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

This is an appeal from summary judgment entered in favor of the defendant in an action for damages filed pursuant to the Civil Rights Act of 1871, 42 U.S.

C.A. § 1983.[1] The complaint averred that the defendant, Prothonotary of the Superior Court of Pennsylvania, violated the appellant's constitutional rights by failing to accept certain papers for filing. To fully comprehend the nature of the complaint initiated in the court below, some knowledge of the history of the appellant's conviction and subsequent efforts to obtain relief is necessary.

Appellant was convicted in a state court of armed robbery in 1954 and sentenced to 20–40 years imprisonment. No direct appeal from the conviction and sentence was taken within the statutorily-prescribed limit of 45 days.[2] Twelve years passed. In 1966 he was permitted to file, nunc pro tunc, a motion for a new trial which was argued before the trial court sitting en banc on October 2, 1967. In an opinion filed on April 29, 1968, the court denied relief.

Following this denial and within the 45 days prescribed by the Pennsylvania appeals statute,[3] appellant mailed to the Prothonotary of the Superior Court a document entitled "Petition to File Appeal without Payments of Costs," a brief, and a petition for a writ of supersedeas—all filed as an apparent appeal from the denial of his motion for a new trial.[4] Within two weeks, however, the materials were returned by the Prothonotary with a letter of transmittal noting that their

rejection was "at the direction of the Court."

The gravamen of appellant's complaint is that the Prothonotary did not present these papers to the Court but arbitrarily returned them without court approval, thereby denying the appellant his right of appellate review and precluding a petition for allocatur to the state Supreme Court.

In direct contradiction to this allegation, the Prothonotary filed an affidavit wherein he attested that the return of the various documents was at the direction of the court and accordingly, moved for summary judgment. In opposition to the motion, appellant filed a "Motion of Plaintiff in response to the Defendant's motion for Summary Judgment," which the court below charitably accepted as a counter-affidavit; and which reasserted the appellant's contention that the Prothonotary had acted without court approval. In this "counter-affidavit" the appellant characterized the Prothonotary's affidavit as a willful and deliberate untruth but offered no facts to substantiate this charge.

Accepting that no civil liability may be imposed on a public official acting pursuant to court order, the district court reasoned that unless there was a genuine issue of fact as to whether the Prothonotary acted at the direction of the court,

1. § 1983. Civil Action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Act of May 19, 1897, P.L. 67, § 4, as amended, 12 P.S. § 1136.

"No appeal shall be allowed, in any case, from a sentence or order of any court of quarter sessions or oyer and terminer, unless taken within forty-five

days from the entry of the sentence or order. * * * Appeals taken after the times herein provided for shall be quashed on motion * * *."
See Commonwealth v. McKnight, 204 Pa.Super. 313, 204 A.2d 281 (1964).

3. 12 P.S. § 1136, *supra* note 2. The appeal papers were mailed by appellant on June 1, 1968.

4. We do not meet the question of perfecting, under Pennsylvania practice, an appeal from the denial of a motion for a new trial by the filing of these instruments. Nor do we meet the question of what review, if any, appellant could receive in the Pennsylvania court system of the order returning the papers to him, unfiled.

the appellee was entitled to summary judgment. In the face of the Prothontary's attestation that his action was pursuant to court order, contrasted with the naked denial of the appellant's "affidavit", the district judge concluded that no "bona fide" issue of fact was presented and granted summary judgment.

We are thus called upon to consider: (1) was there a genuine issue of material fact barring summary judgment; and (2) assuming no genuine issue existed, was the district court correct in holding that the Prothonotary was immune from suit?

 Over a quarter of a century ago, this court, speaking through Judge Maris in Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1018 (3 Cir. 1942), established certain principles governing summary judgment practice:

> "Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment." [5]

Stated in different terms, one who moves for a summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. Fairbanks Morse & Co. v. Consolidated Fisheries Co., 190 F.2d 817, 824 (3 Cir. 1951).

 It is also well established that although a motion for summary judgment can be based solely on the pleadings, consideration may also extend to materials extraneous to the pleadings where such are properly before the court. Federal Rule 56(e) provides, inter alia, that supporting and opposing affidavits may be submitted on personal knowledge, setting forth such facts as would be admissible in evidence and showing affirmatively that the affiant is competent to testify thereto. The Rule further provides that "[W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response * * * must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The Committee Note to subdivision (e) indicates that the last two sentences were added to overcome a line of cases, mainly of Third Circuit vintage, holding that affidavits could not cut through "well-pleaded" averments. In this respect, the committee note states: "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." [6] Consonantly, it has been held that a mere denial is insufficient to raise a disputed issue of fact, Bros., Inc. v. W. E. Grace Mfg. Co., 261 F.2d 428 (5 Cir. 1958), and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient. Thomas v. Mutual Benefit Health & Acc. Ass'n, 220 F.2d 17 (2 Cir. 1955).[7]

 We recognize that where, as here, a plaintiff pleads *pro se* in a suit

---

5. All citations omitted. See also Sarnoff v. Ciaglia, 165 F.2d 167 (3 Cir. 1947); Weisser v. Mursam Shoe Corp., 127 F.2d 344 (2 Cir. 1942).

6. See Moore's Federal Practice, Vol. 6, ¶ 56.01 [14], pp. 2021, 2022. Subdivision (f) of Rule 56 affords an additional safeguard to the party opposing the motion by permitting him to set forth in an affidavit his reasons, if any, why he cannot present "facts essential to justify his opposition." Subdivision (g) prohibits the use of affidavits presented in bad faith or for the purpose of delay. In Robin Construction Company v. United States, 345 F.2d 610 (3 Cir. 1964), we first stated the effect of the amendment to Rule 56 and announced our intention to alter the rule laid down in this circuit in prior cases, stating that we intended to make the amendment to the rules "fully effective."

7. See the discussion in Moore's Federal Practice, Vol. 6, pp. 2161–68; Committee Note to Subdivision (e), *Id.* at p. 2021.

for the protection of civil rights, "the court should endeavor to construe the plaintiff's pleading without regard for technicalities." Picking v. Penna. R. R. Co., 151 F.2d 240, 244 (3 Cir. 1945).[8] Nevertheless, when deciding a motion for summary judgment, it is no legitimate function of the court to assume the existence of a genuine issue of material fact when in truth none exists. In saying this, however, we do not intend to minimize the district court's duty to see that the parties have been given a reasonable opportunity to make their record complete or explain their inability to do so before ruling on a motion for summary judgment. See F.R.Civ.Proc. 56(f). The need to discharge this duty is highlighted in cases where the party opposing the motion is unrepresented.

At the time the court below granted summary judgment this was the posture of the case: plaintiff had made certain factual averments in his pleadings; defendant had answered, denying these factual allegations and had included an affidavit made on personal knowledge containing facts which would be admissible in evidence.[9] In response to this sworn affidavit, plaintiff offered only what amounted to a general denial. Thus, on the critical issue of whether the Prothonotary had acted pursuant to direction of the Superior Court, there was an affidavit from the one person who would have personal knowledge of this fact pitted against a naked denial fortified by no factual averments. Affording due deference to the *pro se* nature of the appellant's complaint and supporting documents, we conclude that the district court was correct in determining that there was no genuine issue of material fact.

This conclusion brings into focus the second question: is a court official acting pursuant to court order clothed with immunity from suit under the Civil Rights Act of 1871? The answer to this question is, of course, dispositive of the propriety of the summary judgment entered below.

Retreating from an earlier position taken in Penna. R. R. Co. v. Picking, *supra*,[10] this court held in Bauers v. Heisel, 361 F.2d 581 (3 Cir. 1966), that the Civil Rights Act of 1871 was not intended to abrogate the common law

---

8. Expressly overruled on other grounds in Bauers v. Heisel, 361 F.2d 581 (3 Cir. 1966).

9. The situation here should not be confused with the well-known rule that "the use of the alleged agent's hearsay assertions that he is agent would for that purpose be inadmissible, as merely begging the very question." Wigmore on Evidence, § 1078, p. 123–24. The above rule has validity in cases where the plaintiff attempts to establish agency through a witness who testifies as to declarations made by the agent. Even in that situation, there is "of course, nothing [which] prevents the alleged agent from *testifying upon the stand* to the facts of his agency; for here his testimony is not offered as an admission." Wigmore, *supra*, at p. 125. (All italics in original.)

In Pennsylvania, it is clear that the agent may be called to testify to the nature and extent of his powers. Pennsylvania Evidence, Henry, § 95, p. 141, and cases cited in footnote 56, p. 141. See also Stern v. Dekelbaum, 153 Pa. Super. 452, 34 A.2d 272, 273 (1943):

"The rule excludes an agent's declarations to prove agency when offered by a third person, but authority may be shown by the agent's own testimony. * * * The authority of an agent can always be proven by the agent himself." Here the Prothonotary, as a party to the suit, was competent to testify as to facts within his personal knowledge which disclose that his action was prompted by court order.

10. In *Picking*, we held that immunity would not be afforded to a justice of the peace (a member of the minor judiciary in Pennsylvania), but the language of the opinion indicated that the abrogation of immunity extended to all other state officers as well. In the interim period between the creation and demise of *Picking*, at least five circuits held that the case had been in effect overruled by Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), which held that state legislators were immune from suit under the Civil Rights Act. See, *e. g.*, Tate v. Arnold, 223 F.2d 782 (8 Cir. 1955); Francis v. Crafts, 203 F.2d 809 (1 Cir. 1953).

immunities enjoyed by members of the judiciary. In a detailed and scholarly opinion tracing the common law origins and scope of judicial immunity, Judge Staley held that both a judge and prosecuting attorney were immune from suit under the Act. The opinion contains an exhaustive compilation of cases with similar holdings.

In addition to the recognized immunity enjoyed by judicial and quasi-judicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.[11] We agree with the statement of the law set forth by Chief Judge Gourley in Ginsburg v. Stern, 125 F.Supp. 596, 602 (W.D.Pa.1954), aff'd. 225 F.2d 245 (3 Cir. 1955):

"I cannot conceive of imposing civil liability upon the Prothonotary for his failure to file of record the petition in question, for I am compelled to take judicial notice of the uncontroverted fact that the Prothonotary is the Clerk of the Supreme Court and is required to follow the instructions of the court which he represents. In this connection there existed no discretion on his part but to obey the order and mandate of the court.

"Thus, assuming that the failure to file said petition was patently violative of complainant's civil rights, no basis in law exists whereby civil liability can be imposed upon a public official acting pursuant to court order and direction.

"To the contrary, were the Prothonotary who holds his position by sufferance of the Supreme Court of Pennsylvania, to refuse to obey its mandate, he would be contemptuous of that court and subject to summary dismissal."

There are compelling reasons for continued recognition of this rule of immunity. In addition to the traditional arguments advanced in favor of general immunity for public officers,[12] i. e., the danger of influencing public officials by threat of suit, the deterrent effect of potential liability, the drain on time caused by frivolous suits, we must also be cognizant of the manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control.

Accordingly, having determined that there was no genuine issue of material fact that the Prothonotary was acting at the direction of the court, and having concluded that in so acting he was wrapped in the cloak of immunity, we hold that the district court properly awarded summary judgment.

The judgment of the district court will be affirmed.

---

11. Immunity by reason of action taken pursuant to court order has been recognized in the case of a police officer, reformatory superintendent, state commissioner of correction, as well as in suits against the state's attorney, grand jury foreman and prison warden. See Dunn v. Gazzola, 216 F.2d 709 (1 Cir. 1954); Francis v. Lyman, 216 F.2d 583 (1 Cir. 1954); Francis v. Crafts, 203 F.2d 809 (1 Cir. 1953), cert. denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Cawley v. Warren, 216 F.2d 74 (7 Cir. 1954); Rhodes v. Houston, 202 F.Supp. 624 (D.Neb. 1962), aff'd. 309 F.2d 569 (8 Cir. 1962), cert. denied, 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719.

12. See Bauers v. Heisel, *supra*, Bradley v Fisher, 80 U.S. (13 Wall.) 335, 349, 20 L.Ed. 646 and Note, 66 Harv.L.Rev. 1285 (1953).