Sherry D. BATTLE, individually
and trading as Battle Bail
Bonding Co., Plaintiff,

v.

Alfred W. WHITEHURST, individually
and in his official capacity as Judge,
Fourth Judicial Circuit of Virginia, Circuit Court of the City of Norfolk,

and

Gary Wright, individually and in his official capacity as Chief Deputy Clerk for
the Circuit Court of the City of Norfolk,

and

Charles Studds, individually and in his
official capacity as Magistrate for
the City of Norfolk, Defendants.

Civ. A. No. 2:93cv350.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 26, 1993.

John Stephen Wilson, Conrad Moss Shumadine, Willcox & Savage, P.C., Norfolk, VA, for defendant Gary Wright.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Plaintiff, Sherry D. Battle, individually and trading as Battle Bail Bonding Co. ("Ms. Battle"), instituted this action under 42 U.S.C. § 1983 seeking damages from the Honorable Alfred W. Whitehurst, a judge of the Circuit Court of the City of Norfolk ("Judge Whitehurst"), Gary Wright, the Chief Deputy Clerk of that court ("Mr. Wright"), and Charles Studds, a Magistrate of the City of Norfolk ("Magistrate Studds"). The complaint also prays for injunctive relief against Judge Whitehurst. All defendants are sued in their individual and official capacities. Ms. Battle also seeks to hold the defendants liable under Va.Code Ann. §§ 18.2–499 and 18.2–500 for conspiring to injure her in her trade or business.[1]

Relying upon principles of absolute judicial immunity or derivative immunity, all defendants have moved to dismiss Ms. Battle's claims for money damages under Fed. R.Civ.P. (12)(b)(6) for failure to state a claim upon which relief can be granted. Judge Whitehurst also has interposed the Eleventh Amendment to the Constitution of the United States as a defense to Ms. Battle's claims seeking injunctive relief against him. All defendants seek dismissal under Fed. R.Civ.P. 12(b)(6) of Ms. Battle's state law claim under Virginia Code Ann. §§ 18.2–499 and 500.

## STATEMENT OF FACTS

Ms. Battle operates a bail bond business in the City of Norfolk. On June 30, 1992, Judge Whitehurst, acting in his judicial capacity and pursuant to the provisions of Virginia Code Ann. § 19.2–152.1, issued a certificate allowing Ms. Battle to act as a bondsman and setting the amount of her obligation at $200,000, thereby limiting Ms. Battle's

Sa'ad El–Amin, El–Amin & Crawford, P.C., Richmond, VA, for plaintiff.

Linwood T. Wells, Jr., Office of Atty. Gen., Crim. Litigation Section, Richmond, VA, for defendants Alfred W. Whitehurst and Charles Studds.

1. The court has supplemental jurisdiction over Ms. Battle's state law claim under 28 U.S.C. § 1367.

ability to bond at an aggregate total of $200,-000. It is undisputed that as of early January 1993 Ms. Battle had issued bonds in excess of the amount permitted by her certificate. Although the amount of the excess is not entirely clear, it was at least $6,050.

This action has its genesis in events which occurred on January 5, 1993. On that date, Ms. Battle posted bond for a prisoner who was subsequently and inadvertently released by the Norfolk Sheriff before the prisoner had signed his contract with Ms. Battle. Ms. Battle alleges that she asked Magistrate Studds for help in resolving this problem and that he was "completely uncooperative, telling Ms. Battle that the bond was not his problem." Ms. Battle reported this conduct to the Chief Magistrate of the City of Norfolk, who subsequently reprimanded Magistrate Studds. This, according to Ms. Battle, angered Magistrate Studds and prompted him to report to Mr. Wright that Ms. Battle had exceeded her $200,000 bonding limit.

Mr. Wright, who is not alleged to have been aware of the difficulty with the prisoner or the alleged recalcitrance of Magistrate Studds, immediately communicated to Judge Whitehurst that Ms. Battle reportedly had exceeded her bonding limit. According to an affidavit filed by Mr. Wright, Judge Whitehurst instructed him to send a letter to Ms. Battle informing her that the limit of her bonding capacity had been exceeded and to inform the Office of the Magistrate for the City of Norfolk that Ms. Battle was not permitted to post any more bonds until her certificate was reinstated by the court. On January 11, 1993, Mr. Wright wrote to Ms. Battle on the official letterhead stationery of the Office of the Clerk of Court: (1) advising her that she had exceeded her bonding limit of $200,000; (2) asking her to submit a list of currently outstanding bonds; (3) asking her to explain why her bonding limit had been exceeded; and (4) informing her that he was "advising the Office of the Magistrate that you are no longer allowed to bond in the Commonwealth of Virginia until the judges of the Norfolk Circuit Court reinstate you." This letter is cited in full in the complaint and a copy of it is attached to several of the briefs.

The complaint further alleges that Ms. Battle asked both Mr. Wright and Judge Whitehurst for access to the evidence supporting the charge that she had exceeded the limit set by her certificate. Mr. Wright is said to have denied "having the evidence" and referred Ms. Battle to Judge Whitehurst, who also supposedly denied having it. In any event, on January 19, 1993, Ms. Battle submitted to Judge Whitehurst what her complaint describes as "written evidence" showing that her active bonds in the Commonwealth totaled $206,050. She says that her submission also showed that her then pledged collateral was worth $208,000 ($198,-000 in real estate equity and $10,000 cash) which she offered to augment with additional collateral. When Ms. Battle brought these facts to Mr. Wright's attention he informed her that the relevant limit was that set by her certificate, not the estimated value of the pledged collateral. Mr. Wright further informed Ms. Battle that other bondsmen were being investigated and, according to the complaint, he told Ms. Battle that another bondsman had received a letter such as the one Mr. Wright sent to her on January 11, 1993.

On January 25, 1993, Ms. Battle delivered a letter to Judge Whitehurst confirming that she had delivered the above-described evidence to Mr. Wright and offering to deposit additional collateral. Ms. Battle says that on the next day she made several attempts to meet with Judge Whitehurst, who declined to meet with her and instead sent word that "her case would be decided at the next meeting of judges which would take place next week." That meeting is said to have occurred on February 2, 1993, and, according to the complaint, Judge Whitehurst wrote to Ms. Battle on February 4, 1993, that "[t]he judges of this circuit have decided to revoke your certificate to act as a professional bondsman. This decision is based upon the fact that you have written bonds far in excess of your collateral." That letter also is quoted in full in the complaint and a copy of it also is attached to several briefs.

Ms. Battle, an African–American female, alleges that the state court did not revoke the certificate of the white, male bondsman who in January 1993 reportedly received

from Mr. Wright a letter similar to the one Mr. Wright sent to Ms. Battle. This, says Ms. Battle, shows that the action taken against her was based solely on her gender and race. Finally, in a related charge, she alleges that in the past white bondsmen have exceeded their bonding limits without adverse consequence, and that certain reporting requirements of Va.Code Ann. § 19.2–152.1 have not been enforced against bondsmen generally, thereby encouraging them to exceed their bonding limits.

On the strength of these allegations, Ms. Battle asserts that Mr. Wright and Judge Whitehurst have affirmatively abused their power by revoking her bonding certificate. Ms. Battle first argues that Va.Code Ann. § 19.2–152.1 only permits suspension of her bonding privilege, not revocation of her license, and that accordingly those defendants abused their power by revoking her license. She also contends that the action taken against her (whether suspension or revocation) was an affirmative abuse of power because it was not preceded by a hearing as required by Va.Code Ann. § 19.2–152.1. Ms. Battle next claims that Mr. Wright and Judge Whitehurst acted arbitrarily and capriciously, denied her constitutionally protected property interest in continuing to act as a bondsman pursuant to the certificate, denied her liberty interest by denying her a hearing to clear her name after having stigmatized her by informing the Norfolk magistrates that she had exceeded her bonding limit, and denied her equal protection of the law based on her gender and race. Finally, Ms. Battle alleges that Judge Whitehurst, Magistrate Studds and Mr. Wright conspired to injure her in her trade or business in violation of Virginia Code §§ 18.2–499 and 500. In this regard, she charges in conclusory terms that each defendant was motivated by spite and ill-will because Ms. Battle was not "cowed by their white, male attempts to control and dominate her" and because she refused to go along with unspecified practices expected of bondsmen in Norfolk.

Ms. Battle's complaint was filed on April 23, 1993. Five days later, by letter dated April 28, 1993, Ms. Battle wrote to Judge Whitehurst and represented that her current bond obligations totalled $57,000, offered again to post additional collateral, and asked for his "immediate attention to this matter." On May 11, 1993, counsel for Judge Whitehurst responded to Ms. Battle and informed her and her counsel that it would be appropriate to withdraw the temporary revocation imposed on February 4, 1993, if Ms. Battle could demonstrate that her outstanding bond obligations were in fact then in the amount of $57,000. Counsel for Ms. Battle also was asked to submit supporting evidence and was told that thereafter "the Court will review the evidence with reasonable dispatch and act appropriately." At oral argument on the pending motions counsel for Ms. Battle acknowledged that there had been no response to this request, but counsel for both sides agreed that a hearing would be held forthwith on Ms. Battle's April 28, 1993 request for reinstatement and the May 11, 1993 response thereto. A hearing was held on August 10, 1993 by Judge Morrison, who is now Chief Judge of the Circuit Court of the City of Norfolk, and Ms. Battle's bonding privileges were reinstated.

## DISCUSSION

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must ascertain whether the factual allegations in the complaint, taken as true and viewed in the light most favorable to the plaintiff, "constitute 'a short and plain statement' of the claim showing that the pleader is entitled to relief." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). In that regard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). To the extent that Mr. Wright's motion relies on matters outside the complaint, it must be treated as a motion for summary judgment, *see* Fed.R.Civ.P. 12(b), and is governed by the now familiar principles that make Fed.R.Civ.P. 56 a useful and important device for narrowing issues and disposing of claims which the undisputed material facts show to be lacking in legal merit.

### A. *The Claims Against Magistrate Studds*

■ At oral argument, counsel for Ms. Battle correctly conceded that the complaint failed to state a claim against Magistrate Studds and asked for leave to amend the complaint to replead the claim against Magistrate Studds. Although Magistrate Studds has moved to dismiss the complaint, he has not answered it. Accordingly, under Fed. R.Civ.P. 15(a), Ms. Battle is entitled to amend the complaint, and the court directs plaintiff to file the proposed amended complaint as to Magistrate Studds within twenty days of the date that this Memorandum Opinion and Order is entered. If the amended complaint is not filed within the time specified, the Clerk is directed to immediately enter an order dismissing with prejudice the original complaint against Magistrate Studds.[2]

### B. *The Claims For Damages Against Judge Whitehurst*

Judge Whitehurst has moved to dismiss all claims for money damages against him on the ground of judicial immunity. The doctrine of judicial immunity provides judges with an absolute defense in actions for money damages brought under 42 U.S.C. § 1983, *see Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), even if the action alleged to have been taken by the judge "was in error, was done maliciously, or was done in excess of his authority." *Stump,* 435 U.S. at 356–57, 98 S.Ct. at 1104–05. Judges will incur liability for money damages only when they act in the "clear absence of all jurisdiction." *Id.* (quoting *Bradley v. Fischer,* 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)).

■ ■ Whether judicial immunity attaches to a judge's conduct depends upon "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and . . . the expectations of the parties, i.e.,

whether they dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107. The Supreme Court "has never undertaken to articulate a precise and general definition of the class of acts entitled to immunity," *see Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); however, the Court has adopted what it terms a "functional" approach in which "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* (emphasis in original). Under this approach, a distinction is drawn between acts that are "judicial or adjudicative," *id.* at 229, 108 S.Ct. at 545, to which immunity attaches, and "the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform," which are not entitled to absolute immunity.[3] *Id.* at 227, 108 S.Ct. at 544.

■ The complaint charges Judge Whitehurst with both affirmative acts and acts of omission. First, it is alleged that he failed to: (1) advise Ms. Battle of the meeting of the judges on February 2, 1993; (2) invite her to the meeting or to allow her to present evidence in her behalf or to challenge the evidence against her; (3) advise her of the evidence considered by the judges at the meeting; and (4) allow her to post additional collateral. Second, Ms. Battle charges that Judge Whitehurst acted unlawfully in "invoking the sanction of revocation" because, in her view, that sanction was not available under Va.Code Ann. § 19.2–152.1. Third, it is alleged that Judge Whitehurst, together with Mr. Wright, affirmatively acted to suspend and revoke Ms. Battle's right to act as a professional bondsman, thereby depriving Ms. Battle of a property interest, a liberty interest and equal protection of the law. Finally, it is alleged that Judge Whitehurst acted affirmatively by conspiring with Magistrate Studds and Mr. Wright to injure Ms.

---

**2.** Counsel and Ms. Battle are admonished that any amended complaint which does not contain specific, clearly-worded, substantive allegations outlining the nature of the charges against Magistrate Studds will be dismissed with prejudice and that the court will consider imposing substantial sanctions for the filing of an amendment

which does not clearly state a claim against Magistrate Studds.

**3.** Administrative, legislative or executive acts may, depending on the circumstances, be entitled to legislative or qualified immunity.

Battle in her trade or business. These acts and omissions form the basis of Ms. Battle's demand for monetary redress in the form of compensatory and punitive damages.

The court finds that this conduct, whether considered separately or, as appears to be the intent of the complaint, collectively, constitutes judicial action as to which Judge Whitehurst enjoys absolute immunity from claims for money damages.

First, there is no doubt that the act of revoking Ms. Battle's bonding privileges is one normally performed by a judge. In fact, under Virginia law, the bonding certificate may be issued, revoked or suspended only by a judge of the court in which the bondsman is certified. *See* Va.Code Ann. § 19.2–152.1. The acts and omissions which are alleged to have occurred in connection with the revocation also are judicial in nature. Second, Va. Code Ann. § 19.2–152.1 contemplates that revocation will occur after a hearing which, of course, is a proceeding that is judicial in nature. Third, according to the complaint, Ms. Battle submitted written evidence to Judge Whitehurst in support of her position on the issue to be decided, *i.e.*, whether Ms. Battle had exceeded the limit set by her certificate; and she also submitted a written argument to Judge Whitehurst, contending that the applicable limit was the value of the collateral, not the limit set by the certificate, and that therefore the matter could be remedied by the posting of additional collateral. Thus, by her own account, Ms. Battle dealt with Judge Whitehurst expecting a decision after a hearing at which evidence was to be considered and the validity of her position was to be determined on a disputed issue by a judicial officer who, in so doing, was discharging duties required of him by statute. The court finds that acts such as these are classically judicial or adjudicative in nature.

The judicial nature of these acts is not altered by Ms. Battle's allegations that Judge Whitehurst consulted with other judges of the state court or acted on the basis of information supplied by Mr. Wright. Nor is the result altered by the allegations that Judge Whitehurst's decision was made without benefit of the kind of hearing required by the statute. Accepting these allegations as true, as the court must for the purpose of ruling on a motion under Fed. R.Civ.P. 12(b)(6), they do not deprive Judge Whitehurst of judicial immunity. At most, the allegations simply charge that Judge Whitehurst acted in error or in excess of his jurisdiction by revoking Ms. Battle's certificate on the basis of an inadequate hearing. The defense of judicial immunity is lost only if the judge acted in the clear absence of all jurisdiction, *Stump v. Sparkman*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05, and the factual allegations in the complaint, construed in the light most favorable to Ms. Battle, do not charge that Judge Whitehurst acted in the clear absence of jurisdiction. Accordingly, the motion to dismiss the claim for money damages against Judge Whitehurst is granted, and those claims are dismissed with prejudice.

## C. *The Claims For Damages Against Mr. Wright*

Ms. Battle makes exactly the same charges against Mr. Wright as she made against Judge Whitehurst, except that she neither charges Mr. Wright with making the revocation decision nor implicates him in the procedural omissions charged against Judge Whitehurst.

On its face, the complaint recites the full text of a letter dated January 11, 1993, and sent by Mr. Wright to Ms. Battle wherein Mr. Wright informs Ms. Battle that the judges of the court had received evidence that she had exceeded her bonding limit and that, as a consequence, he was advising the Office of the Magistrate that Ms. Battle was not allowed to bond until the judges reinstated her. The complaint further recites that when Ms. Battle received the letter she telephoned Mr. Wright, who immediately referred her to Judge Whitehurst. Thereafter, according to the complaint, Ms. Battle communicated only with Judge Whitehurst or his staff. Judge Whitehurst is alleged to have sent a copy of the letter to Mr. Wright and to Chief Magistrate Carawan. Mr. Wright also allegedly sent a copy to Chief Magistrate Carawan, who posted a copy of the letter in the magistrates' offices.

528

 Court clerks, such as Mr. Wright, are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction. *See, e.g., McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972); *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). While it is true that court clerks generally do not enjoy absolute immunity when they perform ministerial duties such as filing pleadings or responding to requests for court files, *see McCray,* 456 F.2d at 4, it is equally true that a court clerk is entitled to derivative absolute immunity when performance of, or refusal to perform, ministerial acts is in accordance with a judicial order. *Id.* at 5. *See also DeFerro v. Coco,* 719 F.Supp. 379 (E.D.Pa.1989).

 The complaint leaves no doubt that in January 1993, as well as in April 1993 when the complaint was filed, Ms. Battle considered that Mr. Wright was acting pursuant to the instructions of Judge Whitehurst when he sent the January 11, 1993 letter to her and to the Chief Magistrate. Giving the allegations of the complaint their plain meaning, and extending to Ms. Battle the benefit of all reasonable inferences which may be drawn from those allegations, Mr. Wright clearly was acting pursuant to Judge Whitehurst's instructions when he engaged in the acts said to give rise to his liability for money damages.[4]

Mr. Wright's motion relies upon an affidavit dated May 6, 1993, to further support his assertion that his actions were taken pursuant to the instructions of Judge Whitehurst. Ms. Battle's counsel alleges that discovery is required to meet Mr. Wright's affidavit. However, that affidavit does nothing more than repeat the allegations of the complaint and hence it adds nothing which cannot be drawn from the complaint as respects the judicial impetus for, and origins of, Mr. Wright's actions. Hence, the court need not, and indeed will not, consider the affidavit in deciding the motion to dismiss.[5] Accordingly, the court finds that there exists no need to allow discovery to meet Mr. Wright's affidavit.

For the foregoing reasons, the court concludes that Mr. Wright is entitled to derivative judicial immunity and, there being no claim for injunctive relief against Mr. Wright, the entire action as to him is dismissed with prejudice.

D. *The Claim For Injunctive Relief Against Judge Whitehurst*

 The doctrine of judicial immunity does not insulate state court judges from claims for injunctive relief under 42 U.S.C. § 1983. The only injunctive relief sought by Ms. Battle against Judge Whitehurst is reinstatement of her certificate to act as a professional bondsman. The issue of her reinstatement was the subject of a hearing before the Circuit Court of the City of Norfolk on August 10, 1993, and the relief Ms. Battle sought was granted after the hearing.

The Circuit Court for the City of Norfolk clearly is where this dispute should have been presented for resolution in the first instance. In any event, given the current posture of the issue, Ms. Battle's prayer for injunctive relief is now moot and no issue of injunctive relief remains before this Court. Accordingly, the claim for injunctive relief is dismissed with prejudice.[6]

4. The complaint does not seek recovery from Mr. Wright for his alleged failure to allow Ms. Battle to review the files of other bondsmen, nor is injunctive relief sought in respect to this alleged failure of duty.

5. Mr. Wright's affidavit shows that Ms. Battle had exceeded her bonding limit by $26,050, rather than by $6,050 as Ms. Battle admits. Since Ms. Battle admits exceeding the limit set by her certificate, it is not material whether the impermissible excursion was in the amount of $20,000 or $6,050.

6. Ms. Battle also seeks a declaratory judgment that Judge Whitehurst denied her equal protection because of her race and sex, that Mr. Wright abused his power and authority by suspending her right to post bonds, and that both Judge Whitehurst and Mr. Wright violated her due process rights in the manner by which her license was revoked. The primary factors to be considered when *deciding whether a declaratory judgment is appropriate are:* (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) whether the judgment will afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937). In this instance, given the court's

## E. *The State Law Conspiracy Claim*

■ The complaint alleges in conclusory terms that Judge Whitehurst, Mr. Wright and Magistrate Studds conspired to injure Ms. Battle in her trade or business in violation of Va.Code Ann. §§ 18.2–499 and 18.2–500. At the outset, the court notes that it is highly doubtful that the state law claim would survive the scrutiny required of civil conspiracy charges because the complaint is totally devoid of any factual allegations tending to show the existence of a conspiracy. *See, e.g., Blackburn v. Fisk University,* 443 F.2d 121 (6th Cir.1971); *Kamsler v. Zaslawsky,* 355 F.2d 526 (7th Cir.1966). To the contrary, the complaint strongly suggests that Magistrate Studds acted, if at all, before and independently of Mr. Wright and Judge Whitehurst and was not thereafter involved in the suspension, revocation or any other conduct of which Ms. Battle complains.

Furthermore, the complaint, fairly read, links the conduct of Judge Whitehurst and Mr. Wright only under circumstances which render both of them immune from the monetary damages sought under the state law claim.[7] For the reasons set forth above, Judge Whitehurst and Mr. Wright are immune from damage claims and that immunity requires dismissal of the state conspiracy law claim against them.

Whether the court will exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Ms. Battle's state law claim against Magistrate Studds is a matter of judicial discretion which will not be addressed until any amended complaint is filed against Magistrate Studds because the content of the amended complaint could alter any analysis of the issue. This is especially true where, as here, the court has dismissed all of the claims over which it had original subject matter jurisdiction with the exception of the possible claims against Magistrate Studds.

## CONCLUSION

For the foregoing reasons, it is ORDERED that:

1. The motion to dismiss filed by Magistrate Studds under Fed.R.Civ.P. 12(b)(6) is denied; provided, however, that the plaintiff is entitled to file an amended complaint as to Magistrate Studds within twenty (20) days of the date this Memorandum Opinion and Order is entered. Failure to file an amended complaint within the time specified will result in the immediate dismissal, with prejudice, of the original complaint against Magistrate Studds;

2. The motion to dismiss filed by Judge Whitehurst under Fed.R.Civ.P. 12(b)(6) is granted, and the action against him is dismissed with prejudice in its entirety;

3. The motion to dismiss filed by Mr. Wright under Fed.R.Civ.P. 12(b)(6) is granted, and the action against him is dismissed with prejudice in its entirety.

It is so ORDERED.

---

findings (1) that Judge Whitehurst and Mr. Wright are immune from an action for money damages because of absolute judicial immunity and derivative immunity, respectively, and (2) that Ms. Battle's prayer for injunctive relief is now moot because of her reinstatement on August 10, 1993, the court further finds that issuing a declaratory judgment in this case would serve no useful purpose in clarifying and settling the legal relations at issue and would afford no additional relief to Ms. Battle. Accordingly, the claims for declaratory relief are also dismissed with prejudice.

**7.** The standards for judicial immunity under Virginia law are substantively the same as those under federal law. *See Johnston v. Moorman,* 80 Va. 131, 142 (1885); *Bellamy v. Gates,* 214 Va. 314, 200 S.E.2d 533, 535 (1973). Therefore, because the court has determined that Judge Whitehurst and Mr. Wright are entitled to immunity under federal law, they are likewise entitled to immunity under Virginia law.