# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alton D. Brown,                               :
                              Petitioner      :
                                              :
              v.                              :    No. 426 M.D. 2018
                                              :    Submitted:  March 22, 2019
Amy Dreibelbis, Esquire,                      :
                              Respondent      :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                      **FILED: August 7, 2019**

Presently before the Court are the Preliminary Objections (POs) filed by Amy Dreibelbis, Esquire, Prothonotary of the Pennsylvania Supreme Court (Prothonotary) to Alton D. Brown's (Petitioner) pro se Petition for Review (Petition) in this Court's original jurisdiction.  In his Petition, Petitioner challenges Prothonotary's actions in dismissing two of his Petitions for Allowance of Appeal (PAAs) for failure to perfect the appeals in accordance with Pennsylvania Rule of Appellate Procedure 3115, Pa.R.A.P. 3115.[1]  In her POs, Prothonotary argues that

---

[1] Rule 3115 provides in relevant part:

The prothonotary shall list for general call at the first session held after September 1 of each year all matters which appear to be inactive for an unreasonable period of time and shall give notice thereof to the parties . . . .  If no action is taken or no

**(Footnote continued on next page…)**

she is protected from Petitioner's claims by sovereign, quasi-judicial, and qualified immunity, and the relief Petitioner seeks is improper and contrary to the law. For the reasons that follow, we sustain the POs and dismiss the Petition, with prejudice.

Initially, when considering POs, "we accept as true all well-pleaded material allegations in the [P]etition . . . , as well as all inferences reasonably deduced therefrom." *Saxberg v. Pa. Dep't of Corr.*, 42 A.3d 1210, 1211 (Pa. Cmwlth. 2012). Further, we consider the evidence in the light most favorable to the non-moving party. *Warren v. Ridge*, 762 A.2d 1126, 1129 n.4 (Pa. Cmwlth. 2000). We will sustain POs only if it "appear[s] with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Saxberg*, 42 A.3d at 1212.

Petitioner alleges as follows in his Petition. Petitioner is incarcerated at the State Correctional Institution at Fayette (SCI-Fayette). Petitioner filed a PAA for *Commonwealth v. Brown* (Pa., No. 205 M.T. 2018), on May 16, 2018, by handing the PAA to a corrections officer. Petitioner filed a second PAA in the matter of *Commonwealth v. Brown* (Pa., No. 206 M.T. 2018), on May 17, 2018, by hand delivery to a corrections officer for purpose of placing it in a prison mailbox.[2] (Petition ¶¶ 5, 6.) Prothonotary returned the PAAs to Petitioner on May 21, 2018,

---

**(continued…)**

> written objection is docketed in the matter prior to commencement of the general call, the prothonotary shall strike the matter from the list and enter an order as of course marking the matter "Terminated . . . ."

Pa.R.A.P. 3115.

[2] Petitioner avers that Prothonotary issued orders on April 27, 2018, for the respective cases, notifying Petitioner that he was required to file his PAAs by May 17, 2018.

and notified him that the PAAs were "dismissed 'for failure to perfect' in accordance with Pa.R.A.P. 3115." (Petition ¶ 7.) Petitioner then submitted Applications for Reconsideration of the orders and attached cash slips as evidence that the appeals were timely submitted in accordance with the prison mailbox rule under Pennsylvania Rule of Appellate Procedure 121, Pa.R.A.P. 121.[3] In his Applications for Reconsideration, Petitioner also requested that Prothonotary provide him with copies of the envelopes in which he sent the PAAs. He did not receive these copies.

Petitioner further avers that his cash slips, which can be verified by the mailroom at SCI-Fayette, demonstrate that the PAAs were timely filed. The Prothonotary was without authority to reject the PAAs under Rule 3115, as that rule relates to inactive matters; thus, Prothonotary acted contrary to customary practice for inmate litigation. Prothonotary's actions in not providing the postmark on the envelopes, "deviat[ing] from normal practice" for pro se prisoners, and rejecting the PAAs "were motivated by the desire to both silence and punish Petitioner because of his attacks and exposure of the illegal criminal justice system." (Petition ¶ 16.) Under Rules 121 and 1112 of the Pennsylvania Rules of

---

[3] Rule 121 provides in relevant part:

> A pro se filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of the date that the prisoner deposited the pro se filing with the prison authorities.

Pa.R.A.P. 121.

Appellate Procedure, Pa.R.A.P. 121, 1112,[4] the Prothonotary has a duty to file Petitioner's PAAs and his Applications for Reconsideration. Petitioner has a constitutional right of access to the courts to redress his grievances, which implicates his due process rights. (Petition ¶¶ 18, 21-23.) Petitioner has no remedy other than mandamus to compel Prothonotary to file his PAAs and Applications for Reconsideration and Petitioner has suffered irreparable harm.

Petitioner asks this Court to issue a preliminary and permanent injunction enjoining Prothonotary from "sabotaging Petitioner's prosecution of the underlying matters in the Supreme Court"; seeks a declaratory judgment that Prothonotary violated his constitutional rights; and requests damages, costs, and any other relief deemed just and appropriate by the Court. (Petition, Wherefore Clause.)

Prothonotary filed the instant POs, asserting that Petitioner's claims are barred because Prothonotary is entitled to sovereign immunity, quasi-judicial immunity, and qualified immunity; and Petitioner's requested relief of injunctive relief, declaratory relief, and money damages are contrary to law. Petitioner filed an Answer to the POs denying these assertions.

In support of the POs, Prothonotary argues[5] that Petitioner's claims against her cannot succeed because she is protected by quasi-judicial and qualified immunity. Because her job duties are integral to the judiciary, Prothonotary argues that she "act[s] as an extension of the [Supreme] Court," and is a quasi-judicial official who should receive immunity. (Prothonotary's Memorandum at 4.) According to Prothonotary, Petitioner's allegations in the Petition arise from

---

[4] Rule 1112 governs appeals by allowance to the Supreme Court and provides the filing procedures regarding dates of mailing, receipt, fees, and filing of petitions for allowance of appeal with Prothonotary. Pa.R.A.P. 1112.

[5] We have rearranged Prothonotary's arguments for ease of discussion.

Prothonotary's functions and duties, which are integral to the judicial process, such as filing and maintaining pleadings. It is necessary to extend quasi-judicial immunity to court personnel, such as herself, Prothonotary argues, because it precludes dissatisfied litigants from expressing their frustration at clerks and court staff. Additionally, Prothonotary argues that qualified immunity is intended to protect public officials from interference with their job duties arising from threats of liability; thus, it should apply here.

Prothonotary also argues that she is protected by the Sovereign Immunity Act[6] from Petitioner's claims because Petitioner is suing Prothonotary in her official capacity as a state agent of a government entity – the Pennsylvania Supreme Court. Section 102 of the Judicial Code, 42 Pa. C.S. § 102, defines the Commonwealth government to include the Courts, Prothonotary asserts, and therefore courts and their employees are "arms of the state." (Prothonotary's Memorandum at 3.) Prothonotary further contends that none of the statutory exceptions to sovereign immunity are applicable here and the defense has not been waived; thus, Petitioner has not stated a claim.

Finally, Prothonotary asserts that Petitioner's request for relief is improper. Prothonotary contends that if this Court granted Petitioner the relief that he seeks, it would be interfering with the hierarchy of the Pennsylvania court system by instructing the Supreme Court on how to manage its cases. Prothonotary further argues that "Petitioner does not seek declaratory relief in the true legal sense," as it is set forth in the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-7541, and that an actual controversy does not exist such that declaratory relief is proper. (Prothonotary's Memorandum at 7.)

---

[6] 42 Pa. C.S. §§ 8521-8527.

5

Petitioner responds[7] that Prothonotary's assertion of sovereign immunity is frivolous and constitutes an admission of wrongdoing. Petitioner further argues that public officials sued in their public capacity for injunctive and declaratory relief, as is the case here, are not entitled to sovereign immunity. Prothonotary's actions of which Petitioner complains were not taken at the direction of the Supreme Court, Petitioner asserts, and therefore Prothonotary is not entitled to absolute immunity. Moreover, because Petitioner has filed his Petition against Prothonotary in her official capacity and because Petitioner seeks injunctive relief, qualified immunity does not apply. Petitioner contends that Prothonotary was without discretion regarding her duty to file his PAAs; thus, he has stated a claim for mandamus to compel Prothonotary to perform her mandatory duty. If Petitioner can prove that Prothonotary did not perform her required duty under the law as he has averred, he contends that he is entitled under Section 8303 of the Judicial Code, 42 Pa. C.S. § 8303,[8] to the damages he seeks. Also with regard to the propriety of the relief he seeks, Petitioner asserts that he does not seek relief from the Supreme Court but rather from Prothonotary for her specific obligations under Rules 3112 and 3305 of the Pennsylvania Rules of Appellate Procedure,

---

[7] After Prothonotary filed the memorandum of law in support of POs, this Court, by order dated September 11, 2018, ordered Petitioner to file a brief in opposition on or before October 4, 2018. Petitioner then filed two applications for extension of time to file the brief in opposition, both of which were granted by this Court, extending the deadline to December 5, 2018. Petitioner sent this Court two more applications for extension of time to file his brief, both dated December 5, 2018, and filed his brief on December 10, 2018. This Court granted the most recent applications for extension of time to file briefs by order dated December 18, 2018. Accordingly, we shall regard Petitioner's brief as timely filed.

[8] Section 8303 provides that "[a] person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa. C.S. § 8303.

6

Pa.R.A.P. 3112, 3305,[9] to perform the duties of prothonotary and dispose of administrative motions, respectively. If this Court does not provide Petitioner with the injunctive relief he seeks, he asserts he will be barred from access to the courts. Finally, Petitioner argues that he is entitled to declaratory relief, as he seeks to determine the validity of a public official's acts, and an actual controversy in which he has a substantial present interest exists.

We begin with Prothonotary's assertion that Petitioner's claims against her are barred because she is entitled to quasi-judicial immunity. "In order to determine whether an individual is entitled to quasi-judicial immunity, we must first examine the nature of the actions complained of to ascertain whether they were performed within the quasi-judicial adjudicatory function." *Pollina v. Dishong*, 98 A.3d 613, 621 (Pa. Super. 2014). Petitioner avers that Prothonotary denied him access to the courts when she issued the orders notifying him that the PAAs were "dismissed 'for failure to perfect' in accordance with Pa.R.A.P. 3115." (Petition ¶ 7.) Rule 3115 requires the Prothonotary give notice to litigants whose cases have been inactive for an unreasonable period of time and mark those matters terminated if the parties do not take action in response to the notice. We must determine whether Prothonotary's actions in dismissing a matter under Rule 3115 are that which are typically considered quasi-judicial.

Pennsylvania courts and federal courts have recognized the quasi-judicial immunity of prothonotaries, court administrators, and court staff for actions taken

___

[9] Rule 3112 establishes the office of prothonotary for each appellate court and authorizes the prothonotaries to perform the duties vested in them by law. Pa.R.A.P. 3112. Rule 3305 provides that the prothonotary of the Supreme Court "is authorized to dispose of motions relating to the preparation, printing and filing of appendix and briefs and those motions generally relating to calendar control, along with the authority to recommend the appropriate sanction for the violation of any applicable rule or order." Pa.R.A.P. 3305.

pursuant to court orders and at the direction of judges. As this Court recognized in *Guarrasi v. Scott*, 25 A.3d 394 (Pa. Cmwlth. 2011), a court administrator has quasi-judicial immunity in certain circumstances. There, a petitioner sought declaratory relief relating to alleged constitutional violations in relation to his requests under the Right-to-Know Law.[10] The petitioner sought relief in this Court's original jurisdiction against various members of a county judiciary, the court administrator, and other county officials, alleging constitutional violations for their actions in denying him access to certain documents. This Court noted that not only are judges absolutely immune when performing judicial acts, but the court administrator, "acting under direction of a common pleas judge," had quasi-judicial immunity from the petitioner's constitutional and civil rights claims. *Id.* at 405 n.11 (citing *Feingold v. Hill*, 521 A.2d 33, 37-38 (Pa. Super. 1987)).

We held that quasi-judicial immunity extends to prothonotaries in *Schneller v. Prothonotary of Montgomery County* (Pa. Cmwlth., No. 1316 C.D. 2016, filed September 12, 2017),[11] where a petitioner brought an action in mandamus to compel a county prothonotary to accept and file his notice of appeal. The prothonotary notified the petitioner it was declining to file his notice of appeal based on an injunction issued by the trial court enjoining the petitioner from making certain claims in the Court of Common Pleas of Montgomery County without an attorney. Because the petitioner filed the action in mandamus five years after the prothonotary notified the petitioner it would not file the appeal, this Court concluded that the claim was barred by the applicable statute of limitations.

---

[10] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[11] *Schneller*, an unreported opinion, is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

*Id.*, slip op. at 13. Nonetheless, this Court also acknowledged that to the extent the petitioner advanced a constitutional tort law claim against the prothonotary, that claim was "barred by the doctrine of quasi-judicial immunity because the [p]rothonotary's refusal to file the notice of appeal was clearly done in connection with her official duties as an officer of the court, and also pursuant to the trial court's order enjoining" the petitioner. *Id.* at 13 n.10.[12]

Following a similar rationale, the United States Court of Appeals for the Third Circuit has also determined that prothonotaries and court administrators are entitled to quasi-judicial immunity. For example, in *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969),[13] the petitioner averred a violation of his constitutional rights when the prothonotary of the Pennsylvania Superior Court did not accept the petitioner's filings "at the direction of the Court." *Id.* at 457. The district court granted summary judgment to the prothonotary on the basis that the prothonotary was acting pursuant to court order and, therefore, was immune from liability. The Third Circuit agreed, and quoted *Ginsburg v. Stern*, 125 F. Supp. 596, 602 (W.D. Pa. 1954), *aff'd,* 225 F.2d 245 (3d Cir. 1955), a case which addressed the rationale underlying judicial immunity for the prothonotary of the Supreme Court: "'the Prothonotary is the Clerk of the Supreme Court and is required to follow the instructions of the court which he represents. In this connection there existed no discretion on his part but to obey the order and mandate of the court . . . . were the Prothonotary who holds his position by

---

[12] We also note that this Court has often determined county prothonotaries are generally immune from suit as local agencies protected from liability under the Judicial Code, 42 Pa. C.S. §§ 8541-8542. *See Ullman v. Symons* (Pa. Cmwlth., 2131 C.D. 2007, filed May 12, 2008), slip op. at 5-6.

[13] Although not binding, decisions from the Third Circuit have persuasive value. *Kutnyak v. Dep't of Corr.*, 923 A.2d 1248, 1250 (Pa. Cmwlth. 2007).

sufferance of the Supreme Court of Pennsylvania, to refuse to obey its mandate, he would be contemptuous of that court and subject to summary dismissal.'" *Lockhart*, 411 F.2d at 460. The Third Circuit also described "the danger of influencing public officials by threat of suit, the deterrent effect of potential liability, the drain on time caused by frivolous suits," and the "manifest unfairness of subjecting" a prothonotary to liability as a consequence of actions taken at the direction of public officials. *Id.* Therefore, the Third Circuit concluded the prothonotary was immune from suit. *Id.*

The Third Circuit reiterated this point in *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 773 (3d Cir. 2000), where it extended quasi-judicial immunity to a deputy court administrator of the Family Court Division of the Court of Common Pleas of Philadelphia County. The deputy court administrator had released documents to a newspaper reporter pursuant to a judge's order, and the Third Circuit concluded that the deputy court administrator "should be absolutely immune" from liability for that action. *Id.* at 772. In so doing, the Third Circuit noted this was consistent with federal court precedent acknowledging quasi-judicial immunity for officials performing quasi-judicial functions. *Id.* at 772-73 (citing *Forrester v. White*, 484 U.S. 219, 226 (1988); *Moore v. Brewster*, 96 F.3d 1240, 1244-45 (9th Cir. 1996); *McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992); *Dellenbach v. Letsinger*, 889 F.2d 755, 763 (7th Cir. 1989)). *See also Davis v. Philadelphia Cty.*, 195 F. Supp. 2d 686, 688 (3d Cir. 2002) (concluding that a clerk of judicial records had quasi-judicial immunity from claims for alleged failure to perfect appeals).

Here, "accept[ing] as true all well-pleaded material allegations in the [P]etition . . . , as well as all inferences reasonably deduced therefrom," we

conclude that "the law will not permit recovery" for Petitioner because Petitioner complains of quasi-judicial actions taken by Prothonotary. *Saxberg*, 42 A.3d at 1211-12. Petitioner's claims are a challenge to actions taken by Prothonotary that are integral to the judiciary, including filing and maintaining pleadings. Prothonotary "serve[s] at the pleasure of the [Supreme C]ourt," Pa.R.A.P. 3111, and carries out duties pursuant to rules and directives set forth by the Supreme Court. This includes disposing of administrative motions, directing parties with regard to filing matters, and maintaining dockets and records. Pa.R.A.P. 3301, 3305, 3113. Prothonotary's duties are further set forth in the Supreme Court's Internal Operating Procedures, which specify that "motions, petitions[,] and applications will be monitored by the Prothonotary's office for compliance with applicable appellate rules. Proposed filings that are not in compliance will not be docketed." 210 Pa. Code § 63.7. Therefore, when Prothonotary dismisses cases, she is acting pursuant to the orders of the Supreme Court as set forth in its internal operating procedures and the Rules of Appellate Procedure. Prothonotary's action of dismissing Petitioner's PAAs pursuant to Rule 3115 was "clearly done in connection with her official duties as an officer of the court," and Prothonotary is protected by quasi-judicial immunity from Petitioner's claims. *Schneller*, slip op. at 13 n.10. Moreover, because quasi-judicial immunity is absolute, Prothonotary is immune from suit not only for Petitioner's claims for damages but from the equitable relief he seeks as well.[14] *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989); *see also Guarrasi*, 25 A.3d at 405 n.11.

---

[14] Taking as true Petitioner's averments that Prothonotary dismissed his PAAs as untimely, although his PAAs were timely filed, Petitioner's relief is with the Supreme Court in the form of a petition to file his PAAs *nunc pro tunc* rather than the relief he seeks here.

When Prothonotary is acting pursuant to rules and internal operating procedures with regard to filings and the docket, her actions are taken without discretion but pursuant to the Supreme Court's directives, and civil liability cannot "be imposed upon a public official acting pursuant to court order and direction." *Lockhart*, 411 F.2d at 460. Further, we acknowledge "the danger of influencing public officials by threat of suit, the deterrent effect of potential liability, [and] the drain on time caused by frivolous suits," that arises should prothonotaries and court administrators be subject to civil liability for their quasi-judicial actions taken pursuant to governing statutes and rules of the court for which they serve. *Id.*

Petitioner's claims arise from actions taken by Prothonotary as an arm of the judiciary; thus, Prothonotary is protected by quasi-judicial immunity for any of the relief Petitioner seeks. Because we conclude that Prothonotary is protected by quasi-judicial immunity, we do not need to address the other grounds set forth in the POs. Accordingly, we sustain Prothonotary's POs and dismiss the Petition, with prejudice.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge Fizzano Cannon did not participate in this case.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alton D. Brown,                   :
               Petitioner     :
                          :
           v.              :    No. 426 M.D. 2018
                          :
Amy Dreibelbis, Esquire,     :
               Respondent   :

# O R D E R

**NOW**, August 7, 2019, the Preliminary Objections of Amy Dreibelbis, Esquire are **SUSTAINED,** and Alton D. Brown's Petition for Review is **DISMISSED**, with prejudice.

_____
**RENÉE COHN JUBELIRER,** Judge