

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2006

# Dotzel v. Ashbridge

Precedential or Non-Precedential: Precedential

Docket No. 04-2975

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Dotzel v. Ashbridge" (2006). *2006 Decisions.* Paper 1509.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1509

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2975

———

NORBERT J. DOTZEL, JR., d/b/a Dotzel Trucking;
JOANNE DOTZEL, d/b/a Dotzel Trucking

v.

ERNEST ASHBRIDGE; JOHN R. BOWER;
DARREN CRISPIN; SALEM TOWNSHIP,
Appellants

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cv-01418)
District Judge:  Honorable James M. Munley

———

Argued May 10, 2005
Before:  SLOVITER and FISHER, *Circuit Judges*,
and POLLAK,* *District Judge*.

————————————

*The Honorable Louis H. Pollak, United States District
Judge for the Eastern District of Pennsylvania, sitting by
designation.

(Filed February 14, 2006 )

Enid W. Harris
Harris & Van Jura
26 Pierce Street
Kingston, PA  18704

Terry Rice (Argued)
Rice & Amon
Two Executive Boulevard, Suite 301
Suffern, NY  10901
	*Attorneys for Appellants*

Bruce J. Phillips (Argued)
Wetzel, Caverly, Shea, Phillips & Rodgers
15 Public Square, Suite 210
Wilkes-Barre, PA  18701
	*Attorney for Appellees*

―――

OPINION OF THE COURT

―――

FISHER, *Circuit Judge*.

In this appeal we consider whether the members of the Board of Supervisors of Salem Township, Pennsylvania are immune from suits brought against them in their individual capacities relating to their decision to deny an application for a permit for a conditional use.  We conclude that they are entitled

2

to absolute quasi-judicial immunity. Accordingly, we will reverse the decision of the District Court.

I.

When reviewing a ruling on a motion to dismiss for failure to state a claim, we accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the plaintiff. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). The relevant allegations can be stated briefly. The Appellants, the defendants below, are Salem Township and the three members of its Board of Supervisors ("the Board"): Ernest Ashbridge, John R. Bower, and Darren Crispin. The Appellees, the plaintiffs below, are Norbert and Joanne Dotzel, the owners of a trucking business in the Township, who applied for a permit to operate a "small mining operation" on their land. Following a hearing in March 2002, the Salem Township Planning Commission granted conditional approval of the Dotzels' application. The Board then held a public hearing on April 9, 2002, and rejected the application. The Board's decision explained that the application was denied because "[t]he proposed use . . . jeopardize[s] the community development objectives of the ordinance." The Dotzels contend that the Board's decision was not supported by the evidence before the Board, but rather was based upon the personal animus of the individual Board members and other improper motives. The Dotzels allege that the Board members failed to review prior to the hearing various submissions accompanying their permit application; that the Board members ignored the recommendation of the Township solicitor to delay the hearing for 120 days; that the Township engineer had advised the

3

Planning Commission to approve the application; that Appellant Ashbridge based his decision upon an inapplicable provision in the Township zoning ordinance; and that Appellant Bower's brother had a quarry operation that would have been forced to compete with the Dotzels' proposed gravel pit.

As was their right under Pennsylvania law, the Dotzels appealed the permit denial in state court and prevailed, winning a reversal and an order that the permit be granted. They then brought suit in the District Court under 42 U.S.C. § 1983 against the Township and the Board, raising several constitutional claims, including violations of their First Amendment rights and their rights to procedural and substantive due process. The District Court dismissed all but the substantive due process claim, holding that the state appellate review provided adequate procedural protection and that the complaint was "devoid of any allegation that describes or particularizes any protected activity" under the First Amendment. The Dotzels do not appeal from those dismissals.

The District Court denied the defendants' motion to dismiss the substantive due process claim, however, holding that discovery was necessary on two issues crucial to municipal liability: whether the Board's denial of the Dotzels' application was so egregiously illegal as to "shock the contemporary conscience," *see Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 427 (3d Cir. 2003) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)), and whether the Board's action constituted "official policy," *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

4

The Board members argued below that regardless of the merits of the claim against the Township, they are entitled to quasi-judicial immunity and cannot be sued in their individual capacities based on their votes. The District Court rejected that argument, explaining that it was "unable to determine the capacity" in which the Board members were acting when they considered the Dotzels' permit application. The Court therefore found itself "unable to determine whether the defendants are protected by judicial immunity," and denied their motion to dismiss. On this question, we disagree with the District Court and will reverse. Analysis of the functions undertaken by the Board in ruling on permit applications persuades us that the Board members act in a quasi-judicial capacity and are therefore entitled to absolute immunity from suit.

## II.

We begin, as we must, with an inquiry into whether we have jurisdiction to consider this appeal under the collateral order doctrine set forth in *Cohen v. Beneficial Loan Corporation*, 337 U.S. 541 (1949), and its progeny. *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999) ("[W]e have an inherent obligation to ensure that we only decide those cases for which there is a proper ground for appellate jurisdiction").

Generally, as an appellate court, we have jurisdiction only over final orders of district courts as set forth in 28 U.S.C. § 1291. A "final order" is one "which terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been

5

determined." *Richerson v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977) (quoting *St. Louis, Iron Mountain and Southern Ry. Co. v. Southern Express Co.*, 108 U.S. 24, 28-29 (1883)). The denial of a motion to dismiss does not end the litigation between the parties and thus does not normally qualify as a final order under section 1291. *See Petroleos Mexicanos Refinacion v. M/T King A (Ex Tblisi)*, 377 F.3d 329, 333-34 (3d Cir. 2004). However, the Supreme Court in *Cohen* explained that section 1291 is to be given a "practical rather than a technical construction," and that there is a "small class" of non-final orders "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546; *see also Bell Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utility Comm'n*, 273 F.3d 337, 342 (3d Cir. 2003); *In re Ford Motor Co.*, 110 F.3d 954 (3d Cir. 1997).

The Supreme Court has held that the denial of absolute immunity is immediately appealable under the *Cohen* collateral order doctrine because a finding of immunity constitutes an entitlement not to stand trial.[1] *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Nixon v. Fitzgerald*, 457 U.S. 731, 742 (1982). While there has been some debate as to the scope of appellate jurisdiction in absolute immunity cases where fact disputes persist about the nature of the challenged official function, we

---

[1]Quasi-judicial immunity is absolute immunity. *See Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003).

have read the Court's decisions to mean that "an order denying qualified or absolute immunity, to the extent that the order turns on an issue of law, is immediately appealable under the collateral order doctrine." *Giuffre v. Bissell*, 31 F.3d 1241, 1245 (3d Cir. 1994). *See Hamilton v. Leavy*, 322 F.3d 776, 782 (3d Cir. 2003); *Schrob v. Catterson*, 948 F.2d 1402, 1406-07 (3d Cir. 1991); *see also Ellis v. The Coffee County Board of Registrars*, 981 F.2d 1185, 1189 (11th Cir. 1993) (citing *Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986)) ("Absolute immunity does not depend on good faith or reasonableness; thus it would be unlikely to find a case where disputed factual questions precluded review.").[2]

_____

[2]Other courts of appeals have relied upon whether a factual dispute exists over the function performed by the government official to determine whether appellate jurisdiction exists to review the denial of absolute immunity. *Compare Ellis*, 981 F.2d at 1189-90 (holding that the court had appellate jurisdiction over denial of absolute immunity because any disputed issues of fact related to the merits of the action, not to the legal determination whether absolute legislative immunity was applicable); *and Babcock v. Tyler*, 884 F.2d 497 (9th Cir. 1989), *overruled on other grounds as recognized in Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (concluding that the court had appellate jurisdiction over denial of absolute immunity where it was undisputed that the defendants' actions took place during agency adjudicative proceedings), *with Lawson v. Abrams*, 863 F.2d 260 (2d Cir. 1988) (holding that the court did not have appellate jurisdiction over denial of absolute prosecutorial immunity because factual dispute existed

Our inquiry into whether quasi-judicial immunity attaches focuses on the nature of the public official's job function, not the merits of the decision made by the official. *See Hamilton*, 322 F.3d at 785. Thus, to determine whether we have jurisdiction over this appeal, we must ask whether the Dotzels' complaint reasonably alleges that the individual Appellants were not acting in their capacity as Board members. Although the complaint alleges that the Board members acted out of animus and other improper motivations, there is no allegation that any decision was made by any appellant other than in his capacity as a member of the Board, or that any decision was made other than through procedures established by applicable state and local law. *See* Pl.'s Compl. ¶¶ 17-27. Accordingly, we have appellate jurisdiction to consider the appeal.

## III.

Our remaining task is to determine whether the functions performed by the individual appellants were quasi-judicial in nature. We exercise *de novo* review over the District Court's legal determination that the Board members are not entitled to quasi-judicial immunity. *See Hamilton*, 322 F.3d at 782.

As its name suggests, "quasi-judicial" immunity is a doctrine under which government actors whose acts are

---

over the nature of the acts the prosecutor performed).

In this case, the question does not arise, because the complaint does not allege that the defendants acted other than in their capacity as Board members.

8

relevantly similar to judging are immune from suit. "Quasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge." *Hamilton*, 322 F.3d at 785. Regardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office. See *Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409 (3d Cir. 1999) (holding that a zoning board acted in a quasi-judicial capacity when it denied a conditional use permit).

The Supreme Court has provided guidance on which features of an allegedly quasi-judicial job function are most important. *See Butz v. Economou*, 438 U.S. 478 (1978). Under *Butz*, our task is to examine the job function at issue with an eye toward these features, which have been aptly summarized by the First Circuit as follows:

> First, does a Board Member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)? Second, does a Board member, like a judge, decide cases sufficiently controversial that in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect [the parties'] constitutional rights?

9

*Bettencourt v. Board of Registration*, 904 F.2d 772, 783 (1st Cir. 1990). In *Hamilton*, *supra*, we glossed the question succinctly as "whether the official acted independently and what procedural safeguards attended his/her decision-making process." 322 F.3d at 785. The inquiry goes to the official's job function, as opposed to the particular act of which the plaintiff complains. Thus the relevant decisional material will be the legal and structural components of the job function, as opposed to detailed facts about specific acts and mental states. With this understanding in mind, we will turn to the *Butz* factors as enumerated seriatim by the Court in *Cleavinger v. Saxner*, 474 U.S. 193, 202 (U.S. 1985).

### A. The need to assure that the function can be performed without harassment or intimidation

While this consideration obviously applies to all government functions, zoning disputes can be among the most fractious issues faced by municipalities, and the risk of threats and harassment is great. The monetary stakes are often quite high, especially in commercial cases like this one, making the possibility of liability an especially potent adversary of objectivity. In this respect, the Board looks like a court. We emphasized this feature of zoning boards in finding quasi-judicial immunity for a New Jersey zoning board in *Bass v. Attardi*, 868 F.2d 45 (3d Cir. 1989), where we noted with approval the observation of the New Jersey Supreme Court that

> the public interest requires that persons serving on planning boards considering applications for development act with independence and without

fear that developers, who will frequently have significant financial resources and the ability to litigate, not bring them into court. The possibility of facing expensive and aggravating litigation as a result of making a decision on an application for development may in a subtle way impact on the decision making process.

*Id.* at 50 n.11. These concerns apply equally in the instant case.

## B. The presence of institutional safeguards against improper conduct

Courts have taken a variety of procedural safeguards as particularly relevant to the judicial status inquiry. The greater the prevalence of such features, the more the activity looks judicial.[3] *See, e.g., Butz*, 438 U.S. at 513-14; *Bettencourt*, 904 F.2d at 783-84; *Jodeco v. Hamm*, 674 F. Supp. 488, 497-98

---

[3]Of course, institutional safeguards typically attend legislative acts, too. Legislative actors, like judicial actors, are entitled to absolute immunity. *Tenney v. Brandhove*, 341 U.S. 367 (1951). Most executive officers, by contrast, are entitled to only qualified immunity, under which they can be sued for acts which are clearly illegal – in other words, which a reasonable officer would have known were illegal. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). While a municipal zoning board could conceivably encompass all three sorts of functions, in this case it is clear to us that the challenged actions are within the heartland of judicial activity.

(D.N.J. 1987).  In this case, many such safeguards are present and required by law.  The local ordinance provides for notice to the parties and the public, Salem Township Zoning Ordinance, § 1506 A, B; public hearings, *id.* § 603 B; specific procedures for conducting hearings, *id.* § 603 C; the right to counsel, *id.* § 1506 G; the use of subpoenas and oaths, *id.*; the issuance of written decisions, *id.* § 1506 K; and the preparation of transcripts, *id.* § 1506 I.

### C. The degree of insulation from political influence

Like judges and unlike most executive officers, the board members here were removable during their terms only for cause.  They were elected, but so are most of the nation's judges; and many appointed officials are highly susceptible to political influence, which is generally exercised in the form of summary dismissal.  Whether an official is elected or appointed is not in itself probative of anything at all in the "acts like a judge" analysis; the devil is always in the details.  The key question for our inquiry is therefore whether the Board members here can be removed from office based on the substance of their official work.  They cannot.  Under the Pennsylvania Constitution, "[a]ll civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate."  Pa. Const. Art. 6 § 7.  The Pennsylvania Supreme Court, in *In re Reese*, 665 A.2d 1162 (Pa. 1995), interpreted this provision to provide the exclusive means of removal for all elected officials in the state, and to preempt

12

any other removal mechanism.  Thus a mayoral recall petition was invalidated under Article 6.  *Id.* at 1167.  In this case, the constitutional limit on removal serves to substantially insulate the Board from political pressure.[4]

## D.      The use of precedent in resolving controversies

We take the relevant question here to be whether the Board's decisions are purely discretionary, or are constrained by outside law.  Thus, though it is not clear to what extent the Board refers to its own prior determinations in reaching decisions, the Board is required by statute to consider in its deliberations the land-use standards set out in the relevant zoning ordinance, and to explain its reasoning in written opinions.  53 Pa. Stat. Ann. § 10913.2 ("The governing body shall render a written decision . . . accompanied by findings of fact or conclusions based thereon, together with any reasons therefor.  Conclusions . . . shall contain a reference to the provision [of law] relied on and the reasons why the conclusion is deemed appropriate in the light of the facts found.").  This procedure is quintessentially judicial.

## E.      The adversarial nature of the process

_____

[4]Indeed, under Article 6, if the Board members here had been appointed, they would not have enjoyed such protection from summary termination:  "Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed."  Pa. Const. Art. 6 § 7.

13

The Board's cases are adversarial as a matter of law. The zoning ordinance requires that all interested parties be given notice and an opportunity to appear and be heard, Salem Township Zoning Ordinance, § 603 B, F; prohibits board members from all ex parte contacts, § 603 J, and from inspecting the disputed site unless all parties are given an opportunity to attend, *id.*; and provides for cross-examination of witnesses and challenges to the relevance of proffered evidence, § 603 G, H. These are hallmarks of adversarial proceedings.

## F.    The availability of appellate review

A formal appellate procedure is probably the single most court-like feature a governmental body can have. Many of the safeguards listed above, for example the issuance of written decisions and preparation of transcripts, exist largely to facilitate appellate review. And it is a hallmark of courts, unlike legislatures and executives, that (with one exception) they do not consider themselves to be either final or infallible. Thus it is with the Board. By statute, its decisions are appealable as of right in the Court of Common Pleas. 53 Pa. Stat. § 11002-A. In the instant case, in fact, the plaintiffs, on appeal in that court, secured a reversal of the Board's ruling. The features of the process that allowed the plaintiffs to pursue their appeal now immunize the Board members from this suit: precisely because that remedy was open to them, this one is closed.

We conclude that the District Court's reluctance to decide the question of immunity was excessively cautious. The Board members here were acting in a quasi-judicial capacity, and are absolutely immune from suit in their individual

capacities. Any actions against them in their individual capacities must therefore be dismissed.[5]

IV.

We do not hold that the mantle of quasi-judicial immunity is to be draped indiscriminately upon the shoulders of every municipal board of supervisors or like entity. Rather, we must closely and carefully examine the functions performed by the board in each case and apply the factors indicated by the Supreme Court, as we have done here. For the reasons set forth above, we conclude that Appellants are entitled to quasi-judicial immunity. Accordingly, we will reverse the decision of the District Court and remand for further proceedings consistent with this opinion.

---

[5]The remaining substantive due process claim against the Township and the Board members in their official capacities is not affected by our decision in this appeal. The substantive due process claim against the Board members in their official capacities "is, in all respects other than name, to be treated as a suit against the entity." *Bass*, 865 F.2d at 51 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The Township, as a municipal entity, is not entitled to any form of immunity. *Id.* (citing *Aitchinson v. Raffiani*, 708 F.2d 96, 100 (1983); *Owen v. City of Independence*, 445 U.S. 622, 657 (1980)).