NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1140
_____

JOHN SAVADJIAN,
                              Appellant

v.

MARLENE CARIDE, JOHN/JANE DOES 1-10, and
XYZ CORPORATIONS 1-10
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 3:18-cv-16381)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on September 15, 2020

Before: KRAUSE, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: September 23, 2020)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

In 2014, New Jersey's Department of Banking and Insurance ("Department") initiated a state administrative action against insurance agent John Savadjian. The Department alleged that Savadjian violated various provisions of New Jersey state insurance law and sought to revoke his insurance license. During the course of the proceedings, Marlene Caride, the Department's Commissioner, concluded that certain evidence Savadjian wished excluded was authentic and, therefore, admissible, and issued a ruling to that effect. Savadjian sued the Commissioner in her individual capacity, claiming violations of his constitutional rights. The District Court dismissed his complaint because the Commissioner was due absolute quasi-judicial immunity. We will affirm.

## I. BACKGROUND[1]

In April 2014, the Department initiated a state administrative proceeding against Savadjian. In the Order to Show Cause, the Department alleged that Savadjian had violated various provisions of the New Jersey Insurance Producer Licensing Act, N.J. Stat. Ann. § 17:22A-26 *et seq.* Savadjian contested the Order, and the Department, pursuant to the New Jersey Administrative Procedures Act, transferred the matter to the Office of Administrative Law for a hearing before an Administrative Law Judge. *See* N.J. Admin. Code § 1:1-3.2.

---

[1] Because Savadjian appeals an order granting a Rule 12(b)(6) motion to dismiss, we draw the facts from nonconclusory allegations in his complaint and matters of public record. *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

In advance of the hearing, Savadjian filed a motion *in limine* to exclude audio recordings of telephone calls the Department alleged he had made, along with other materials related to the recordings. The Department produced a witness to authenticate the recordings, but the witness had little knowledge of the evidence at issue. The witness could not testify to how the evidence was obtained and preserved, nor did he supervise anyone who did. The ALJ thus ruled that the Department could not authenticate the recordings, rendering them inadmissible.

The Department sought interlocutory review of that ruling with the Department's then-Acting Commissioner. App. 7; *see also* N.J. Admin. Code § 1:1-14.10(a) (allowing that "an order or ruling may be reviewed interlocutorily by an agency head at the request of a party"). That Acting Commissioner modified the ALJ's ruling and remanded the issue to the ALJ to allow the ALJ to develop a more thorough evidentiary record before ruling on the authentication question.

On remand, the ALJ permitted further testimony from the authentication witness, but found the testimony insufficient to justify admitting the recordings and related materials. The ALJ concluded that "[u]ntil [the Department] provides a witness who can authenticate these documents and provide a residuum of legal and competent evidence to prove that Savadjian made the calls, . . . these documents will remain inadmissible and will not be admitted into evidence." App. 59-60. The Department again sought interlocutory review by the Commissioner of the ALJ's inadmissibility ruling.

On the second interlocutory review, Commissioner Caride issued a decision concluding that the Department had satisfied the requirements for authentication and remanded

3

the matter to the ALJ to admit the evidence into the proceedings. App. 120-21. Savadjian appealed Commissioner Caride's decision to the New Jersey Superior Court and, also in state court, separately sued Commissioner Caride in her individual capacity. In his suit against Commissioner Caride, Savadjian alleged that the Commissioner violated his constitutional rights and sought monetary damages and various other relief.

Commissioner Caride removed the state court action to the District Court and moved to dismiss, arguing that she was entitled to absolute immunity for her review and modification of the ALJ's evidentiary ruling. The District Court granted Commissioner Caride's motion. It reasoned that "Commissioner Caride performed functions comparable to that of a judge and acted within the scope of her authority when she modified the ALJ's evidentiary rulings," and "[a]ccordingly, she is entitled to absolute immunity from suit." App. 444. We agree.

## II. DISCUSSION[2]

Savadjian contends the District Court erred in dismissing his suit on the ground that Commissioner Caride was due absolute quasi-judicial immunity. Savadjian argues that Commissioner Caride's responsibilities are not functionally comparable to those of a judicial officer, and that she was not acting within the scope of her authority when she reviewed and modified the evidentiary decision of the ALJ.

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a). We have jurisdiction under 28 U.S.C. § 1291. We review *de novo* the District Court's Rule 12(b)(6) dismissal on the basis of quasi-judicial immunity. *Russell v. Richardson*, 905 F.3d 239, 246 (3d Cir. 2018); *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008); *Dotzel v. Ashbridge*, 438 F.3d 320, 324-25 (3d Cir. 2006).

4

**A. The doctrine of quasi-judicial immunity may immunize executive officials performing judge-like functions**

The doctrine of quasi-judicial immunity provides that those "who perform functions closely associated with the judicial process" are immune from damages suits in their individual capacities. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). The doctrine protects a range of government actors, including "those who make discretionary judgments 'functionally comparable' to judges." *Id.* (internal brackets omitted) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)); *see also Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003). Accordingly, it has been extended to cover administrative law judges, *see Cleavinger*, 474 U.S. at 200, and agency officials tasked with performing adjudicative functions within the executive branch, *see Butz v. Economou*, 438 U.S. 478, 516 (1978).

To determine whether a government actor is due quasi-judicial immunity, "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *Russell*, 905 F.3d at 247 (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)). In making this determination, we "must consider whether the official acted independently and what procedural safeguards attended his/her decision-making process." *Hamilton*, 322 F.3d at 785. But absolute immunity is "strong medicine," *Forrester*, 484 U.S. at 230 (citation omitted), and an "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question," *Burns v. Reed*, 500 U.S. 478, 486 (1991).

**B. Commissioner Caride performed a duty functionally comparable to that of a judge**

In *Cleavinger*, the Supreme Court formulated factors "characteristic of the judicial process" to evaluate whether a government actor's function qualifies as "judicial" for the purpose of determining immunity. *See* 474 U.S. at 202 (citing *Butz*, 438 U.S. at 512). Those factors include "(a) the need to assure that the individual can perform [her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Id.* We have remarked that these factors are the "touchstones" of the quasi-judicial immunity inquiry. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011).

The District Court thoroughly examined each *Cleavinger* factor and soundly concluded that "on balance Commissioner Caride was performing a function comparable to that of a judge when she issued [her ruling]." App. 435. The stakes of an administrative proceeding like this one are high, and ensuring that the Commissioner can decide legal or factual issues without fear of individual liability facilitates judicious decision-making. *See Dotzel v. Ashbridge*, 438 F.3d 320, 325-26 (3d Cir. 2006). Further, Commissioner Caride's ruling was based upon the record before the ALJ, which was produced through an adversarial process in which procedural safeguards were followed. *See* App. 437.

Commissioner Caride's evidentiary ruling also was constrained by precedent and state statutory and administrative law. She was permitted to review, reject, and modify the

6

ALJ's factual findings or legal conclusions, but in doing so had to "state with particularity the reasons for rejecting the findings" and "make new or modified findings supported by sufficient, competent, and credible evidence in the record." App. 439 (quoting N.J. Stat. Ann. § 52:14B-10(c)).

Commissioner Caride's evidentiary ruling did just that. *See* App. 440. It describes the evidence the Department wished admitted and the procedural background of the administrative action. App. 63-70. The ruling then articulates the legal standards that were applied by the ALJ, App. 70-79, details each party's position as to each piece of evidence sought to be admitted, App. 80-93, and finally explains the legal and factual bases supporting the admission of each piece of contested evidence, App. 93-121.

Finally, the process that led to the Commissioner's ruling was quintessentially adversarial and correctable on appeal. Savadjian and the Department were given "an opportunity for [a] hearing after reasonable notice" where, before an ALJ, they could "present evidence and argument on all issues involved." App. 440 (quoting N.J. Stat. Ann. § 52:14B-9(a), (c)). Both parties were able to direct and cross-examine witnesses, *see* App. 29-39, file pleadings, and "present argument to the head of the agency" where the ALJ's ruling was unfavorable, App. 440 (quoting N.J. Stat. Ann. § 52:14B-10(c)). And Savadjian was entitled to appeal the Commissioner's ruling to the Appellate Division of the New Jersey Superior Court, *see* App. 442, a right he exercised right around the same time he initiated this action.

Savadjian observes that the Commissioner "serves at the pleasure of the Governor" and, thus, "presumably can be removed from office with or without cause." Appellant Br.

7

22 (internal brackets and citation omitted) (citing N.J. Stat. Ann. § 17:1-2(a)). To Savadjian, the possibility that the Commissioner may be removed without cause places her "under obvious pressure to resolve a disciplinary dispute in favor of [the Department] and the State of New Jersey." *Id.*

We cannot quarrel with that assertion, and neither did the District Court. *See* App. 438-39 (noting that "Commissioner Caride has identified no other provisions or rules that might insulate her office against political pressure in the context of reviewing ALJ decisions"). Serving at the pleasure of the Governor certainly exposes the Commissioner to various political pressures. But, as the District Court found, the impact of any potential political pressure Commissioner Caride may have encountered was blunted by the procedural safeguards present in the administrative proceeding and by the availability of an appeal. *See* App. 438-39.

In all, examination and application of the *Cleavinger* factors support the District Court's conclusion that Commissioner Caride satisfied her burden to show that she was serving a function comparable to a judge when she issued her evidentiary ruling.

**C. Commissioner Caride was acting within the scope of her authority in reviewing and modifying the ALJ's evidentiary determination**

Our conclusion that Commissioner Caride was performing functions comparable to those of a judge does not end the inquiry. Once a court deems that a public official performs functions comparable to those of a judge, that official will be subject to liability only if she "acted in the 'clear absence of all jurisdiction.'" *See Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1872)); *see*

8

*also Russell*, 905 F.3d at 247 ("Even a judge will not enjoy immunity for nonjudicial actions, *i.e.*, actions not taken in her judicial capacity, or for judicial actions taken in the complete absence of all jurisdiction." (internal quotation marks, citation, and brackets omitted)).

Savadjian claims that Commissioner Caride's review and modification of the ALJ's evidentiary ruling "exceeded the bounds of her authority." Appellant Br. 25. Specifically, Savadjian argues that Commissioner Caride "ignored established precedent placing limits on her authority," and that, "under established law, [she was] not empowered to disregard the credibility and evidentiary findings of the ALJ." *Id.* at 27. For support, Savadjian cites to a string of New Jersey cases for the proposition that "the ALJ, as the gatekeeper of evidence . . . is better suited than an agency head . . . to evaluate the credibility, authenticity, and admissibility of proffered evidence." *Id.* at 25-27.

Savadjian's premise may well be true, but his conclusion does not follow. Certainly in most instances the ALJ, as evidentiary gatekeeper, is better suited to make credibility, authenticity, and admissibility determinations, much like a district court judge is better suited to perform those kinds of tasks than we are. But, simply put, New Jersey law authorizes the precise actions taken by Commissioner Caride here. Parties to an administrative proceeding are entitled to a "recommended report and decision" by an ALJ. N.J. Stat. Ann. § 52:14B-10(c). The ALJ's decision "may be adopted, modified or rejected by (the head of the agency), who by law is empowered to make a final decision in th[e] matter." N.J. Admin. Code § 1:1-18.3(c)(12). The recommended decision must be filed with the agency head, who then is authorized to "adopt, reject or modify" the recommendations of

9

the ALJ. N.J. Stat. Ann. § 52:14B-10(c), (d); *see also* N.J. Admin. Code § 1:1-18.6(a) (stating that "the agency head may enter an order or a final decision adopting, rejecting or modifying the initial decision"). The agency head may also grant interlocutory review of decisions by the ALJ at the request of a party. N.J. Admin. Code § 1:1-14.10.

The record demonstrates that the administrative proceeding charted this exact course, and, therefore, Commissioner Caride cannot be said to have acted beyond the scope of her authority in taking actions expressly permitted by New Jersey statutory and administrative law.

### III. CONCLUSION

For the foregoing reasons, we will affirm the District Court.