NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1929
_____

WILLIAM SPIESS; KASHEEN THOMAS;
GENE THOMAS, II; JALEEL HOLDEN; JOSE LACEN

v.

POCONO MOUNTAIN REGIONAL POLICE DEPARTMENT; TOBYHANNA
TOWNSHIP; MOUNT POCONO BOROUGH; TUNKHANNOCK TOWNSHIP;
COOLBAUGH TOWNSHIP; CHIEF HARRY W. LEWIS; RICHARD W. LUTHCKE;
JOHN P. BOHRMAN; LUCAS BRAY; CHRIS WAGNER; MONROE COUNTY
PENNSYLVANIA; MICHAEL RAKACZEWSKI, ESQUIRE;
WENDY BENTZONI; POCONO MOUNTAIN REGIONAL POLICE COMMISSION

Michael Rakaczewski, Esquire; Wendy Bentzoni,
                                                        Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-00287)
District Judge:  Hon. James M. Munley
_____

Submitted Under Third Circuit LAR 34.1(a)
September 9, 2014

Before:  FISHER, JORDAN, and HARDIMAN *Circuit Judges*.

(Filed: September 16, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Appellants Michael Rakaczewski, Esq., and Wendy Bentzoni appeal from the order of the United States District Court for the Middle District of Pennsylvania denying their motions for summary judgment based on assertions of absolute and qualified immunity. Because this appeal asks us to determine if the District Court erred as to what material facts are genuinely at issue, we will dismiss for lack of appellate jurisdiction.

## I.    Background[1]

On the morning of February 11, 2008, a sixteen-year-old girl, AJ, and a fifteen-year-old girl, TM, went to the Pocono Mountain Regional Police Department and reported that they had been sexually assaulted on February 9, 2008, by multiple men at a house party. The girls were interviewed separately and, in describing the assaults they said were committed by the Appellees – William Spiess, Kasheen Thomas, Gene Thomas, II, Jaleel Holden, and Jose Lacen – they gave different accounts of what happened. Although their accounts varied, it is undisputed that the girls were at a party, that the Appellees were also there, and that sexual activity took place.

After the girls were interviewed, Detective Richard Luthcke of the Pocono Mountain Regional Police Department and Bentzoni, a detective for the Monroe County District Attorney's Office, took AJ to the Pegasus Child Advocacy Center in Carbondale, Pennsylvania, where she was examined by the Medical Director, Dr. Andi Taroli.

---

[1] As we write solely for the parties, we set forth only those facts necessary to our analysis.

Dr. Taroli confirmed that AJ had been sexually assaulted. Luthcke then called his supervisor, Detective Chris Wagner, regarding the alleged assault and brought Wagner into the on-going investigation. Luthcke and Wagner spoke with AJ together, but the interview was not recorded.

That evening, a group of detectives went to Spiess's residence, where Spiess's mother told the detectives that TM's family had spoken to her and her husband about the party. Spiess's mother gave the detectives a note in TM's handwriting stating that Spiess was not involved in the alleged assaults. Approximately two hours later, Spiess voluntarily arrived at police headquarters and was interviewed by Luthcke and another detective. Luthcke then prepared search and arrest warrants for Lacen, at whose home the alleged assaults took place. Wagner reviewed the warrants and affidavits of probable cause and spoke with Rakaczewski, a Monroe County Assistant District Attorney,[2] who approved the warrants. The warrants were then presented to a judge.

The judge granted the search and arrest warrants, and authorities executed a search at Lacen's home. They arrested him shortly before midnight on February 11, 2008. The remaining Appellees were variously arrested on February 25, 2008, and March 24, 2008. The Appellees were each charged with multiple counts of rape. Three of the five

---

[2] Rakaczewski was the sexual assault prosecutor in the District Attorney's Office. Relevant here, in the spring of 2006 and October of 2007, AJ made allegations of sexual abuse against a family member, which the police determined to be unfounded but forwarded to Rakaczewski. He declined to prosecute based on the police's determination that the allegations were unfounded.

Appellees were minors, but they were charged as adults because AJ claimed that a knife was used during the assault.

A preliminary hearing was held on March 28, 2008, at which AJ and TM testified, and the Appellees were subsequently incarcerated for nearly a year awaiting trial. In January 2009, however, the District Attorney's Office received a letter from AJ's school stating that she had confessed to giving false statements and testimony. The school's letter indicated that she said that the sexual activity had been consensual and that no knife was involved. When Rakaczewski and Luthcke interviewed AJ, she denied the school's allegation. However, during a second interview, AJ confessed to lying about three things: that Spiess assaulted her, that there was alcohol at the party, and that a knife was involved in the assault. In February 2009, Rakaczewski filed a *nolle prosequi* petition and agreed to the Appellees' subsequent expungement petitions.

The Appellees then filed a complaint under 42 U.S.C. § 1983 alleging, *inter alia*, false arrest and false imprisonment against certain detectives, including Bentzoni, and a false arrest claim against Rakaczewski in his investigative capacity. The Appellants and other defendants[3] filed motions for summary judgment, in which the Appellants asserted both absolute and qualified immunity. The District Court denied summary judgment on those immunity claims.

---

[3] The defendants included Bentzoni, Rakaczewski, and four Pocono Regional Police Department detectives, including Wagner and Luthcke, as well as the chief of police and various municipal defendants. Some defendants were dismissed, and a stipulated dismissal pursuant to a settlement disposed of the remaining defendants save for Rakaczewski and Bentzoni, who are the only defendants before us now.

4

In denying Rakaczewski's claim of absolute immunity, the District Court referred to its holding on an earlier motion to dismiss, in which the Court had ruled that "[t]he complaint plausibly alleges that ADA Rakaczewski's actions were akin to merely advising officers as to probable cause or directing the gathering of evidence in an investigative capacity," which would not entitle him to absolute immunity. (App. at 42.) As to Bentzoni's claim of absolute immunity, the Court likewise held that, because Bentzoni's actions were investigative, she too was not entitled to absolute immunity.

Turning to qualified immunity, the District Court determined that "the existence of disputed historical facts material to the objective reasonableness of ADA Rakaczewski's conduct must be resolved by a jury." (App. at 46.) The Court noted that Rakaczewski's arguments for qualified immunity were "almost identical to his arguments for absolute immunity," in that they hinged on whether he was acting in a prosecutorial or investigative role. (*Id.*) Importantly, the District Court noted that Rakaczewski "fails to recall whether or not he was physically present at [police] Headquarters during the investigation." (*Id.*) But, as the Court pointed out, police detectives testified that "Rakaczewski was present at the police station and was one of the individuals who made the collective determination as to whether or not probable cause existed." (*Id.*) Next, the Court found that Bentzoni was "intimately involved with the investigation" but that the "objective reasonableness of Bentzoni's conduct is a disputed factual issue." (App. at 47-48.) In conclusion, the Court "decline[d] to find qualified immunity" for Rakaczewski or

5

Bentzoni, "viewing the unresolved factual issues in the light most favorable to plaintiffs." (App. at 50.)[4]

The Appellants timely appealed. The Appellees responded by moving to quash or dismiss this interlocutory appeal for lack of appellate jurisdiction. They argue that we lack jurisdiction over the District Court's denial of summary judgment on the question of immunity because that denial is based on the existence of disputed issues of material fact. We asked the parties to address our jurisdiction, and, on May 23, 2013, following submissions from the parties, we issued an order declining to dismiss the instant appeal but directing the parties to further address our jurisdiction in their briefing.

## II.    Discussion[5]

We conclude that we do not have jurisdiction and must therefore dismiss the appeal without reaching the merits.

### A.    *Interlocutory Appeals*

We have jurisdiction over "all final decisions of the district courts." 28 U.S.C. § 1291. Given that statutory mandate, "interlocutory appeals – appeals before the end of district court proceedings – are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995). Certain "collateral orders," however, may qualify as final orders if they

---

[4] The Appellants also sought summary judgment on the merits. The District Court granted the motion with respect to the malicious prosecution claim against Bentzoni but concluded that a genuine dispute of material fact existed as to the malicious prosecution claim against Rakaczewski and the false arrest and false imprisonment claims against both Appellants.

[5] The District Court had jurisdiction under 28 U.S.C. § 1331. "We necessarily exercise *de novo* review over an argument alleging a lack of appellate jurisdiction." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010).

6

are part of a "small class" of orders that would "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require [waiting] until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see Eddy v. V.I. Water & Power Auth.,* 256 F.3d 204, 208 (3d Cir. 2001) (establishing review of collateral orders when they would "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits …, and (3) be effectively unreviewable on appeal").  An order denying summary judgment when the defendant is asserting immunity may be an appealable collateral order.  *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2018-19 (2014) (stating that "pretrial orders denying qualified immunity generally fall within the collateral order doctrine"); *Johnson*, 515 U.S. at 312 (stating that denial of qualified immunity is an appealable collateral order when denial turns on a question of law); *Nixon v. Fitzgerald*, 457 U.S. 731, 743 (1982) (finding appellate jurisdiction over the denial of the President's absolute immunity claim).

Qualified immunity protects government officials from the burdens of a trial "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This requires a two-step analysis: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether the right was clearly established, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Barton v. Curtis*, 497 F.3d 331, 335 (3d Cir. 2007) (internal quotation

7

marks omitted) (dismissing appeal for lack of jurisdiction due to district court's determination that whether the defendant acted recklessly was a question for the jury).

Under the more limited doctrine of absolute immunity, prosecutors are immune from suit under § 1983 for "initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). Prosecutors are protected only by qualified immunity, however, for actions taken in an "investigative or administrative capacity." *Carter v. City of Phila.*, 181 F.3d 339, 356 (3d Cir. 1999) (internal quotation marks omitted); *see Odd v. Malone*, 538 F.3d 202, 217 (3d Cir. 2008) (denying absolute immunity after determining that defendants performed a "fundamentally administrative task"). Such investigative functions include giving legal advice to the police as to the existence of probable cause. *Burns v. Reed*, 500 U.S. 478, 496 (1991); *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).

It is well-established that we have jurisdiction over an appeal from a denial of immunity that presents issues of law but that we do not have jurisdiction over an appeal from a denial of immunity that is based on questions of fact. *See, e.g.*, *Plumhoff*, 134 S. Ct. at 2019 (exercising jurisdiction over the denial of qualified immunity when the district court's order was based on legal issues rather than "purely factual issues"); *Dotzel v. Ashbridge*, 438 F.3d 320, 324 (3d Cir. 2006) (indicating that, where factual disputes remain, a denial of absolute immunity is only immediately appealable "to the extent that the order turns on an issue of law"); *In re Montgomery Cnty.*, 215 F.3d 367, 373 (3d Cir. 2000) (noting that a "denial of qualified immunity falls within the collateral-order doctrine only to the extent the denial turns on the issue of law"). When a defendant's

8

motion for summary judgment based on qualified immunity is denied, "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002); *see Johnson*, 515 U.S. at 319-20 (denying appellate jurisdiction to review a district court's determination of whether a dispute of fact is "genuine").

Thus, our jurisdiction to review the District Court's order denying summary judgment here "depends on whether the … appeal raises pure questions of law or whether it challenges the District Court's determination of which facts were sufficiently supported by evidence." *Blaylock v. City of Phila.*, 504 F.3d 405, 409 (3d Cir. 2007).

The District Court's denial of absolute immunity was not expressly grounded on a conclusion that a genuine dispute of material fact existed. However, the Appellants challenge the factual premise of the District Court's ruling that they were not entitled to absolute immunity. With regard to Rakaczewski, the Appellants directly ask us to "decid[e] whether there are genuine issues of fact that preclude summary judgment" on the issue of absolute immunity. (Appellant's Reply Br. at 4.) With regard to Bentzoni, the Appellants challenge the District Court's factual determination, stated elsewhere in its order, that Bentzoni was "intimately involved with the investigation." (App. at 47.) The appeal of the absolute immunity ruling thus turns on factual disputes, which we have no jurisdiction to review at this stage.

The District Court denied qualified immunity based on its express determination that there are disputed issues of material fact. The Court expressly noted the "unresolved factual issues" (App. at 50), which precluded the Appellants' motion for summary

9

judgment. In coming to that conclusion, the District Court relied in part on the fact that, although Rakaczewski could not remember if he was present at police headquarters, police detectives testified that Rakaczewski was not only at the station, but he was part of the investigation. The District Court's determination that this factual discrepancy exists is unreviewable at this stage. Likewise, the Court found, as noted, that Bentzoni was "intimately involved with the investigation," and whether her actions were objectively reasonable was a matter of dispute. (App. at 47-48.) Bentzoni's appeal is thus premised on a factual challenge regarding her level of involvement. We have no jurisdiction to resolve such issues.

To preclude summary judgment, however, a dispute of fact must be material. Fed. R. Civ. P. 56. Looking at the record, we agree that the factual dispute as to what actions Rakaczewski took on February 11, 2008, are material to the immunity issue, as both absolute and qualified immunity turn on what role he played that day, *i.e.*, was it investigative and, if so, were his actions objectively reasonable. *See Carter*, 181 F.3d at 356 (actions taken in an investigative capacity are entitled only to qualified immunity). Included in this factual dispute is whether Rakaczewski was even present at police headquarters for the investigation and determination of probable cause. The District Court concluded that the record presents a clear dispute about where Rakaczewski was and what he did, which is properly reserved for the jury. Likewise, the dispute over what actions Bentzoni undertook as a liaison between the police and District Attorney's Office, and whether those actions were reasonable, is material to her immunity claims as well. The Appellants argue that "their *actions* did not violate clearly established law and were

10

objectively reasonable" (Appellants' Opening Br. at 20 (emphasis added)), yet what exactly those actions were is in dispute and goes to the heart of their immunity claims.

Indeed, the Appellants do not argue that the District Court made an error of law. Rather, they assert that "there are no facts in the record presented by the plaintiffs to strip [Appellants] of their immunity defenses." (*Id*. at 14.) That assertion, directly at odds with the District Court's view of the record, implicates the type of factual determination which we cannot address at this stage in the litigation. "We have no jurisdiction[] ... in an interlocutory appeal to review a District Court's determination that there is sufficient record evidence to support a set of facts under which there would be no immunity." *Schieber v. City of Phila.*, 320 F.3d 409, 415 (3d Cir. 2003).[6]

## III. Conclusion

For the foregoing reasons, we will dismiss the appeal.

---

[6] The Appellants also challenge the District Court's ruling on the merits of their claims, which the Court denied due to the existence of genuine disputes of material fact. We similarly lack jurisdiction to review these rulings. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2018 (2014) ("An order denying a motion for summary judgment is generally not a final decision within the meaning of § 1291 and is thus generally not immediately appealable.").